**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| EDDIE C. LUCAS, JR., | : | Civil No. 1:23-CV-01458 |
| Plaintiff, | : | |
| v. | : | |
| TOXEY *et al.*, | : | |
| Defendants. | : | Judge Jennifer P. Wilson |

## MEMORANDUM

Before the court are cross motions for summary judgment. (Docs. 102, 103, 107.) Also pending is Plaintiff's motion for a referral to a settlement conference. (Doc. 111). The court will grant Defendants' motion for summary judgment, deny Plaintiff's motions for summary judgment, enter judgment in the favor of Defendants, and deny the pending motion for a referral to a settlement conference.

### BACKGROUND AND PROCEDURAL HISTORY

On September 1, 2023, the court received a complaint from Plaintiff, an inmate who was housed at the State Correctional Institution Greene ("SCI-Greene") in Waynesburg, Pennsylvania. (Doc. 1.) The complaint raised cruel and unusual punishment and deliberate indifference claims under the Eighth Amendment, due process claims under the Fourteenth Amendment, claims under the Americans with Disabilities Act ("ADA"), retaliation claims under the First Amendment, and an undefined discrimination claim regarding the denial of his

psychiatric medications following his transfer to SCI-Smithfield. (*Id.*) As defendants, Plaintiff named "SCI-Smithfield/Mental Health Parole Department." (*Id.*) Plaintiff also filed a motion to proceed *in forma pauperis*. (Doc. 6.) On September 25, 2023, the court screened the complaint pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii), granted Plaintiff leave to proceed *in forma pauperis*, and dismissed the complaint with leave to renew because he failed to name proper defendants under 42 U.S.C. § 1983. (Doc. 13.)

On October 5, 2023, the court received Plaintiff's amended complaint raising claims associated with the denial of psychiatric medications at SCI-Smithfield and naming SCI-Smithfield Mental Health as a defendant along with Ms. Fawn ("Fawn"), a "mental health practitioner" and nurse, Ms. Smith ("Smith"), titled "psychology/mental health", and Superintendent Chad Wakefield ("Wakefield"). (Doc. 14, pp. 1–2.)[1] The court dismissed all claims raised in the amended complaint and gave Plaintiff the opportunity to file a second amended complaint. (Doc. 22.)

The court received and docketed the second amended complaint on January 12, 2024. (Doc. 25.) This complaint named five psychiatrists as defendants: (1) Toxey ("Coxy"); (2) Webster ("Weber"); (3) Shafer ("Shaffer"); (4) Davis; and (5)

[1] For ease of reference, the court uses the page numbers from the CM/ECF header.

PoulPolueller ("Polmueller"). (Doc. 25, pp. 2–3.)[2] Plaintiff alleged that while he was housed at Monroe County Jail, he was taking psychiatric medications, including 450 milligrams of Seroquel each day and 750 milligrams of Depakote. (*Id.*, p. 4.) Plaintiff also alleged that when he was not incarcerated, he attended REDCO group in Stroudsburg, Pennsylvania for intensive mental health treatment. (*Id.*) He alleged that on October 26, 2022, he was transferred from Monroe County Jail to SCI-Smithfield. (*Id.*) He stated that the information concerning his previous treatment was confirmed by SCI-Smithfield doctors on October 26, 2022. (*Id.*) Plaintiff stated that "on 10-31-2022 said defendants, [Psychiatric Team Doctors] stoped [sic] providing Eddie Lucas mental health serious medications of Seroquel and Depakote." (*Id.*, p. 5.) Plaintiff alleged that on November 10, 2022, he had a suicide attempt by hanging in a cell. (*Id.*) Plaintiff states that he did not remember his actions, only waking up in a helicopter while being transferred to a county hospital where he underwent an extensive number of tests and x-rays. (*Id.*) Plaintiff alleged that after 11 hours of medical and mental health treatment, he was transferred back to SCI-Smithfield. (*Id.*) Plaintiff alleged that "this clear negligence and abuse of these named defendants could have been avoided." (*Id.*)

---

[2] Defendants identified themselves as Douglas Weber, M.D., Margaret Shaffer, Davis, John Coxy, and Eugene Polmueller, M.D. (Doc. 54, p. 1.)

Based on these facts, Plaintiff raised claims under the ADA, the Fourteenth Amendment, and the Eighth Amendment. (*Id.*, pp. 5–6.)

On June 21, 2024, Defendants filed a motion to dismiss the complaint for failure to state a claim. (Doc. 53.) After briefing, the court granted the motion in part and denied the motion in part. (Doc. 62). The court dismissed all claims under the Americans with Disability Act and the Fourteenth Amendment with prejudice. (*Id.*) The court allowed the Eighth Amendment claim to proceed. (*Id.*) Fact discovery has been completed. Plaintiff filed a motion for summary judgment that was received and docketed by the court on February 27, 2026. (Doc. 102.) The same day, Defendants filed a motion for summary judgment, brief in support and a statement of facts. (Docs. 103, 104, 105). Plaintiff then filed a second motion for summary judgment that contained one additional page that was not included in his initial motion. (Doc. 107). On May 11, 2026, the court received and docketed a motion for a referral to a settlement conference from Plaintiff. (Doc. 111.)

## JURISDICTION AND VENUE

The court has jurisdiction over Plaintiff's action pursuant to 28 U.S.C. § 1331, which allows a district court to exercise subject matter jurisdiction in civil cases arising under the Constitution, laws, or treaties of the United States. Venue is proper in this district because the alleged acts and omissions giving rise to the

claims occurred at the State Correctional Institution Smithfield ("SCI-Smithfield") in Huntingdon County, Pennsylvania, which is located within this district. *See* 28 U.S.C. § 118(b).

## MOTION FOR SUMMARY JUDGMENT STANDARD

A court may grant a motion for summary judgment when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute of fact is material if resolution of the dispute "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Summary judgment is not precluded by "[f]actual disputes that are irrelevant or unnecessary." *Id.* "A dispute is genuine if a reasonable trier-of-fact could find in favor of the nonmovant' and 'material if it could affect the outcome of the case." *Thomas v. Tice*, 948 F.3d 133, 138 (3d Cir. 2020), (quoting *Lichtenstein v. Univ. of Pittsburgh Med. Ctr.*, 691 F.3d 294, 300 (3d Cir. 2012)).

In reviewing a motion for summary judgment, the court must view the facts in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor. *Jutrowski v. Twp. of Riverdale*, 904 F.3d 280, 288 (3d Cir. 2018) (citing *Scheidemantle v. Slippery Rock Univ. State Sys. of Higher Educ.*, 470 F.3d 535, 538 (3d Cir. 2006)). The court may not "weigh the evidence" or "determine the truth of the matter." *Anderson*, 477 U.S. at 249. Instead, the

court's role in reviewing the facts of the case is "to determine whether there is a genuine issue for trial." *Id.*

The party moving for summary judgment "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56(c)). The non-moving party must then oppose the motion, and in doing so "'may not rest upon the mere allegations or denials of his pleadings' but, instead, 'must set forth specific facts showing that there is a genuine issue for trial. Bare assertions, conclusory allegations, or suspicions will not suffice.'" *Jutrowski*, 904 F.3d at 288–89 (quoting *D.E. v. Cent. Dauphin Sch. Dist.*, 765 F.3d 260, 268–69 (3d Cir. 2014)).

Summary judgment is appropriate where the non-moving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp.*, 477 U.S. at 322. "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Anderson*, 477 U.S. at 252. "Where the record taken as a whole could not lead a rational trier of fact to find for

the non-moving party, there is no genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

## DISCUSSION

### A. Defendant's Statement of Material Facts is Unopposed.

Defendants filed a statement of material facts along with their motion for summary judgment and brief in support. (Doc. 105.) Plaintiff filed a response to Defendants' motion for summary judgment but did not provide a separate statement of material facts. (Doc. 109.)

Local Rule 56.1 sets forth the following requirements for Plaintiff's response to any motion for summary judgment:

> A motion for summary judgment filed pursuant to Fed.R.Civ.P.56, shall be accompanied by a separate, short and concise statement of the material facts, in numbered paragraphs, as to which the moving party contends there is no genuine issue to be tried.
>
> The papers opposing a motion for summary judgment shall include a separate, short and concise statement of the material facts, responding to the numbered paragraphs set forth in the statement required in the foregoing paragraph, as to which it is contended that there exists a genuine issue to be tried.
>
> Statements of material facts in support of, or in opposition to, a motion shall include references to the parts of the record that support the statements.
>
> All material facts set forth in the statement required to be served by the moving party will be deemed to be admitted unless controverted by the statement required to be served by the opposing party.

L.R. 56.1.

Because Plaintiff did not respond to Defendants' statement of material facts, the court deems the facts set forth by Defendants as admitted. Furthermore, Plaintiff concedes that there is no genuine issue of material fact in this case in his responsive briefing. (Doc. 109, p. 3.)

**B. Relevant Information from Defendants' Statement of Material Facts**

**1. John Coxey, CRNP**

Coxey is a Certified Nurse Practitioner in the field of psychiatry working at the DOC. (Doc. 105-1, p. 1.) Throughout Plaintiff's incarceration, Coxey was a provider at SCI-Rockview. (*Id.*) Therefore, Coxey had no contact with Plaintiff during his incarceration at SCI-Smithfield from 2022 to 2023. (*Id.*)

**2. Nadine Davis, CRNP**

Davis is a Certified Nurse Practitioner in the field of psychiatry working at the DOC. (Doc. 105-5, p. 1.) Throughout Plaintiff's incarceration, Davis was a provider at SCI-Houtzdale. (*Id.*) Therefore, Davis had no contact with Plaintiff during his incarceration at SCI-Smithfield from 2022 to 2023. (*Id.*)

**3. SCI-Smithfield Providers**

Douglas Weber, M.D., Eugene Polmueller, M.D., and Margaret Shaffer, CRNP are providers who worked at SCI-Smithfield during Plaintiff's incarceration from 2022 to 2023. (Docs. 105-2, 105-3, 105-4.)

On March 9, 2022, Plaintiff was seen via telemedicine at the Redco Group, where his treatment plan was reviewed. (Doc. 105-6, p. 3.) Plaintiff had run out of his medications two days before the visit, and his current prescriptions included 200 mg of Seroquel three times a day, 1500 mg of Depakote, and 50 mg of hydroxyzine three times a day, and 10 mg of Prozac. (*Id.*) At the appointment, his hydroxyzine was put on hold and 300 mg gabapentin as needed for anxiety was added. (*Id.*) Plaintiff was seen again at Redco Group on September 8, 2022, and he self-reported that he needed to start taking his medications. (*Id.*, p. 7.)

Plaintiff was seen at intake at SCI-Smithfield as a parole violator on October 26, 2022, and his current medications were listed as Depakote 500 mg twice a day, Seroquel 200 mg each morning, and Seroquel 250 mg each night. (*Id.*, pp. 18–25.) Plaintiff reported he had last received these medications the day before. (*Id.*, p. 25.) Plaintiff reported no mental health concerns at intake, denied symptoms, and reported that if he had mental health concerns, he understood the process of getting in touch with the psychology department through a request slip. (*Id.*, p. 33.) Plaintiff did report a history of a suicide attempt by hanging in 1999. (*Id.*) An addendum was added on October 27, 2022, indicating that Plaintiff "states that he is on Seroquel and Depakote and his last dosage was yesterday. . . He denies any current SI/SIB/HI. His only mental health concern is that he receives his

medications while he is here. He was counseled on how to obtain mental health services while in the DOC." (*Id*., p. 37).

On October 31, 2022, Plaintiff was seen for an initial examination at SCI-Smithfield, reporting that he was "[c]urrently on psych medications," and he denied other concerns he would like to discuss. (*Id*., p. 40.) He was seen later that day for a rash. (*Id*., pp. 42–44).

On November 2, 2022, Plaintiff was seen by PSS Shannon Keith, LPC who noted that he was argumentative and demanded to see psychiatry. (*Id*., p. 45.) Plaintiff asked why he was not given Seroquel and Depakote when he arrived at SCI-Smithfield, and the provider explained that she had reviewed his chart and received an e-mail and according to records he had not filled his prescription since September 12, 2022 for a 30-day supply, which indicated that he had not been taking his Seroquel for at least the previous two weeks. It was then determined that he would not experience adverse side effects at this point, and he would be seen as scheduled. (*Id*.) When the provider asked where Plaintiff had gotten his last dose of medications, Plaintiff yelled "I was in the fucking county. You all are fucking stupid if you don't know where I came from. . ." (*Id*.) The provider then stated "[t]hough inmate was belligerent and disrespectful, PSS has an obligation to ensure continuity of care and has asked the medical clerk to obtain his Monroe County MAR and verify his last dose." (*Id*.)

On November 4, 2022, Defendant Douglas entered a progress note in Plaintiff's file stating "I was scheduled to work at SCI Benner for this AM only. At 11:40 I was informed by the officer that they are feeding now, and that no more inmates can be brought over until after count this afternoon. As such, I was unable to see this patient and he will need to be rescheduled sometime in the next 1-2 weeks." (*Id.*, p. 46.) Later that date, Plaintiff was contacted by psychology during an escort back to his block, provider Morris-Wakefield told him that not all of his information was verifiable and would follow-up to verify medications, but a lower dose of Seroquel would be requested for approval and administration over the weekend. (*Id.*, p. 50.) Plaintiff was provided with an explanation of DOC protocols, coping strategies, and distress tolerance. (*Id.*) Plaintiff was referred to providers for weekend check-ins for stability. (*Id.*) The progress note includes the note that "notified by Ms. Morris that the inmate was prescribed Seroquel 200 mg three times a day in the county jail. This info was not communicated upon transfer. He has not taken the med since 10/26. Plan to start 100 MG for two nights then increase to 200 mg HS and have inmate seen on Monday to address further," and the new Seroquel prescription was placed. (*Id.*, pp. 51, 53.)

On November 5, 2022, Plaintiff was seen by psychology staff, and presented as calm and rational. He refused Depakote because it increased his anxiety when

taken without Seroquel. (*Id*., p. 55.) Plaintiff denied any psychology symptoms. (*Id*.)

On November 6, 2022, Plaintiff was seen by psychology and confirmed that he had received his medications the previous night. (*Id*., p. 58.) The note states that Plaintiff seemed optimistic that he would get back on track with his mental health, and he accepted worksheets on managing thoughts and emotions. (*Id*.)

On November 7, 2022, Plaintiff was seen by Defendant Polmueller, who discussed the history of Seroquel use. (*Id*., pp. 59–64.) Plaintiff stated that at the county facility he was receiving 200 mg of Seroquel three times a day, and that "state prison is not nearly as stressful, he is hopeful that he will be able to function with his Depakote and a lower dose of Seroquel." (*Id*., p. 59.) Plaintiff was prescribed 200 mg at bedtime and 100 mg in the morning. (*Id*., pp. 59, 61.) Specifically, Plaintiff was deemed not suicidal (*Id*., p. 60.)

On November 10, 2022, Plaintiff was found in his cell following an attempted hanging. (*Id*., pp. 65–86.) Plaintiff then had a seizure. (*Id*., p. 9.) Plaintiff was transferred to UPMC Altoona, where he received treatment and was discharged the same day. (*Id*, pp. 9–17.)

**C. Judgment Will Be Entered in Favor or Defendants.**

**1. Personal Involvement**

To state a claim under 42 U.S.C. § 1983, a plaintiff must meet two threshold requirements. He must allege: 1) that the alleged misconduct was committed by a person acting under color of state law; and 2) that as a result, he was deprived of rights, privileges, or immunities secured by the Constitution or laws of the United States. *West v. Atkins*, 487 U.S. 42, 48 (1988). It is also well established that "[a] defendant in a civil rights action must have personal involvement in the alleged wrongs to be liable, and cannot be held responsible for a constitutional violation which he or she neither participated in nor approved." *See Baraka v. McGreevey*, 481 F.3d 187, 210 (3d Cir. 2007) (citation omitted).

Defendants Coxey and Davis have provided evidence in the form of their own affidavits establishing that neither of them had any personal involvement in the events at issue in this lawsuit. (Docs. 105-; 105-5.) Plaintiff does not present any evidence of a genuine issue of material facts as to the involvement of Defendants Coxey and Davis. (Doc. 107, p. 3.) Therefore, the court will grant Defendants' motion for summary judgment as to claims raised against Defendants Coxey and Davis.

**2. Eighth Amendment**

Remaining is an Eighth Amendment claim of deliberate indifference against Defendants Weber, Shaffer, and Polmueller.

Prison officials violate the Eighth Amendment when they act with deliberate indifference to a prisoner's serious medical needs. *See Estelle v. Gamble*, 429 U.S. 97, 104–05 (1976). To sustain a constitutional claim under the Eighth Amendment for inadequate medical treatment, a plaintiff must make (1) an objective showing that his medical needs were serious, and (2) a subjective showing that the defendants were deliberately indifferent to those medical needs. *See Pearson v. Prison Health Serv.*, 850 F.3d 526, 534 (3d Cir. 2017). A serious medical need is "one that has been diagnosed by a physician as requiring treatment or one that is so obvious that a lay person would easily recognize the necessity for a doctor's attention." *Monmouth Cnty. Corr. Institutional Inmates v. Lanzaro*, 834 F.2d 326, 346–47 (3d Cir. 1987) (citation omitted). A prison official is deliberately indifferent when he or she "knows of and disregards an excessive risk to inmate health or safety." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994).

Defendants argue that based on the evidence agreed to by the parties, there is no deliberate indifference on their part. (Doc. 104, pp. 12–15.) The court agrees.

Defendants have submitted evidence that Plaintiff's medications were discontinued as a result of poor communication at the time of his transfer from the

county facility to SCI-Smithfield. Defendants submitted treatment notes that include staff confirming with Plaintiff's pharmacy the date he last filled his Seroquel, which was six weeks prior to his arrival at SCI-Smithfield for a 30-day supply resulting in the conclusion that Plaintiff had not taken the medication for two weeks with no reported symptoms. (Doc. 105-6, p. 45.) Defendants also submitted evidence that Plaintiff reported taking the Seroquel the day prior to his transfer to SCI-Smithfield at intake along with a statement that Plaintiff had been transferred from a county facility. (*Id*., pp. 25, 28.) Despite Plaintiff's reports, he was not prescribed the Seroquel upon his arrival at SCI-Smithfield based on the information received from his pharmacy. However, there is nothing to indicate that the providers at SCI-Smithfield knew of and disregarded an excessive risk to Plaintiff's health. Instead, it appears that Plaintiff's report that he was taking his Seroquel while housed at the county facility was overlooked by SCI-Smithfield staff based on the follow up with his pharmacy. Staff at SCI-Smithfield may have come to the wrong conclusion regarding Plaintiff's medication history, but there is nothing in the record to support the conclusion that they deliberately disregarded or ignored his medical needs. Such conduct may amount to medical negligence, but medical negligence does not rise to the level of an Eighth Amendment violation. *Estelle*, 429 U.S. at 105–106. Once the psychology department was made aware of the lack of medication, staff took steps to restart the medication including verifying

the dose and date of last administration with the county facility, initiating an increasing taper of the medication, and seeing Plaintiff on a daily basis through November 7, 2022, when he agreed that a lower dose was acceptable to manage the level of stress he was experiencing now that he was at a state facility. During his daily check-ins while the medication was being reintroduced, Plaintiff never reported psychological symptoms that would make providers aware of an impending suicide attempt. Plaintiff has not submitted evidence to demonstrate that there is an issue of material facts and has conceded that there is no issue of material facts in this matter in his responsive briefing. (Doc. 107.) Therefore, there is no evidence to support a finding that Defendants knew of and disregarded an excessive risk to Plaintiff's health. As such, the court will grant Defendants' motion and enter judgment in favor of Defendants.

## CONCLUSION

For the above-stated reasons, the court will grant Defendants' motion for summary judgment and enter judgment in favor of Defendants. Plaintiff's pending motions for summary judgment will be denied for the same reasons. Since judgment will be entered in favor of Defendants, there is no need to proceed with settlement negotiations, and Plaintiff's motion for a referral to a settlement conference will be denied. The case will be closed.

An appropriate order follows.

s/Jennifer P. Wilson
JENNIFER P. WILSON
United States District Judge
Middle District of Pennsylvania

Dated: September 21, 2026